[No. A109062. First Dist., Div. Three. Aug. 29, 2006.]

DWIGHT PATRICK REILLY, as Trustee, etc., Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

### Counsel

Reid, Axelrod, McCormack, Griffis & Ruane, Peter Axelrod, Virginia C. McCormack; and Philip A. Gunning for Plaintiff and Appellant.

Dennis J. Herrera, City Attorney, Julie Van Nostern, Chief Tax Attorney, Peter J. Keith and Carol A. Boardman, Deputy City Attorneys, for Defendant and Respondent.

### Opinion

**McGUINESS, P. J.**—Under Proposition 13, real property may be reassessed at its current market value when ownership of the property changes. (*Pacific*

*Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155 [2 Cal.Rptr.2d 536, 820 P.2d 1046] (*Pacific Southwest*).) In this appeal, we consider whether there is a change in ownership of real property held by a testamentary trust when an income beneficiary of the trust dies and is succeeded by another income beneficiary. The City and County of San Francisco (the City) reassessed real property held by a trust after a new income beneficiary succeeded a beneficiary who died. The trustee filed suit and sought a property tax refund, arguing there was no change in ownership under Revenue and Taxation Code section 60, which generally defines what constitutes a change in ownership for purposes of reassessing property.[1] The trial court granted summary judgment in favor of the City. We conclude there was a change in ownership under section 60 because the beneficiary's death caused a transfer of the property's primary economic value to the successor beneficiary, who acquired a present beneficial interest in the property. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

In 1965, Francis O'Reilly executed a will providing for the creation of a testamentary trust upon his death containing all of his personal and real property. O'Reilly died in 1966. Under the terms of the will, O'Reilly's grandniece, Geraldine McGovern, was entitled to receive all of the net income derived from the Francis O'Reilly Testamentary Trust (the trust) for the remainder of her life. The trust's assets included the real property at issue in the litigation, described as apartments located at 421–435 Buena Vista East Avenue in San Francisco (the property).

Beginning in March 1967, when the property was distributed to the trust, McGovern was the trust's sole present income beneficiary. The terms of O'Reilly's will provided that upon McGovern's death, the trust would terminate and the entire remaining corpus of the trust would be distributed to McGovern's "issue or survivors of [her] predeceased issue." However, the will also provided that, should McGovern die without issue surviving her, then O'Reilly's nephew, appellant Dwight Patrick Reilly (identified as "Dwight O'Reilly" in the will) would become the income beneficiary of the trust for the duration of his life.

McGovern died without issue in November 2000. Accordingly, Reilly became the sole income beneficiary of the trust for the duration of his life upon McGovern's death. There was no parent-child or spousal relationship between McGovern and Reilly. Upon Reilly's death, the trust will terminate

---

[1] All further statutory references are to the Revenue and Taxation Code unless otherwise specified.

and its assets will be distributed as provided in the will. Reilly is not a beneficiary of the trust's principal.

After McGovern died, Reilly succeeded her as trustee. We shall refer to Reilly as trustee when he is acting in that capacity to avoid confusion about Reilly's status as beneficiary or trustee. The trust held legal title to the property continuously since March 1967, and at no time prior to this appeal did the trustee transfer the property by way of deed or quitclaim to any other person or entity. The trustee reported that the trust sold the property during the pendency of this appeal.

The City assessor determined that a 100 percent assessable change in ownership in the property occurred when Reilly replaced McGovern as the sole present income beneficiary of the trust. The assessor did not rely upon the fact that Reilly succeeded McGovern as trustee in determining that a change in ownership occurred. The property was reassessed, raising its assessed value from $375,637 in tax year 2000–2001 to $1.8 million in tax year 2001–2002. As a result of the reassessment, the trust paid at least $40,000 more in property taxes through early 2004 than it otherwise would have.

Reilly, in his capacity as trustee, appealed to the City's Assessment Appeals Board, challenging the determination that a change in ownership occurred.[2] Following a hearing, the Assessment Appeals Board upheld the assessor's determination, concluding that the present beneficial interest in the property transferred to trust beneficiary Reilly upon the death of the predecessor beneficiary, McGovern. The trustee paid the disputed taxes owed and filed a claim for refund of taxes due with the San Francisco Board of Supervisors, which took no action on the claim.

Reilly, in his capacity as trustee, thereafter filed suit against the City, seeking a refund of taxes paid and declaratory relief. The trustee and the City entered in a joint stipulation of facts and also stipulated to the admissibility of relevant documents, including O'Reilly's will and the written decision of the Assessment Appeals Board. Both parties filed motions for summary judgment on the stipulated facts. The trial court granted the City's motion, denied the trustee's motion, and entered judgment for the City. The trustee timely appealed from the judgment.

---

[2] The trustee did not challenge the valuation of the property. Accordingly, the proper valuation of the property, assuming there was a change in ownership, is not at issue in this appeal.

## DISCUSSION

### 1. Standard of Review

The interpretation and application of section 60 is a question of law. We review de novo a determination that an assessable change in ownership occurred under section 60. (*Shuwa Investments Corp. v. County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1644 [2 Cal.Rptr.2d 783].)

### 2. General Principles Governing Change in Ownership Under Proposition 13

■ Proposition 13 generally provides that real property shall be taxed at an ad valorem rate not to exceed 1 percent of its full cash value. (Cal. Const., art. XIII A, § 1, subd. (a).) " '[F]ull cash value' " means "the county assessor's valuation of real property shown on the 1975–76 tax bill under 'full cash value' or, thereafter, the appraised value of real property when purchased [or] newly constructed, or [when] a *change in ownership* has occurred after the 1975 assessment." (*Id.*, § 2, subd. (a), italics added.) A property's appraised value may be adjusted to account for inflation but any increase may not exceed 2 percent per year. (*Id.*, § 2, subd. (b).)

Proposition 13 did not define "change in ownership." (*Pacific Southwest, supra,* 1 Cal.4th at p. 160.) Instead, it fell to the Legislature to define the term. (*Id.* at p. 161.) "The main effort to create consistent and uniform guidelines to implement Proposition 13's undefined 'change in ownership' provision was undertaken by a 35-member panel . . . . The panel's work culminated in the Report of the Task Force on Property Tax Administration (hereafter task force report), which was submitted to the Assembly Committee on Revenue and Taxation on January 22, 1979."[3] (*Pacific Southwest, supra,* 1 Cal.4th at p. 161.) The panel's basic change-in-ownership test was adopted verbatim and codified as section 60. In addition to the basic change-of-ownership test in section 60, the panel identified common types of transfers and established concrete rules for them in sections 61 and 62. (1 Cal.4th at p. 161.) Section 61 contains examples of transfers constituting a change in ownership, while section 62 contains examples of transfers *not* constituting a change in ownership. (See §§ 61, 62.) The task force report stressed that the examples in sections 61 and 62 must be consistent with the overarching rule governing change in ownership contained in section 60. (*Pacific Southwest, supra,* 1 Cal.4th at pp. 161–162.)

Section 60 provides: "A 'change in ownership' means a transfer of a present interest in real property, including the beneficial use thereof, the value

---

[3] On the court's own motion, we take judicial notice of the task force report. (Evid. Code, §§ 452, subd. (c), 459; see *PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1204, fn. 25 [13 Cal.Rptr.3d 630].)

of which is substantially equal to . . . the fee interest." Thus, three elements are required to effect a change in ownership: (1) a transfer of a present interest in real property; (2) a transfer of the property's beneficial use; and (3) a transfer of value substantially equal to the fee interest. (See *Pacific Southwest, supra,* 1 Cal.4th at p. 162.) "The general purpose of section 60, evident from its three subdivisions, is to ensure that it is the *fee* interest, or its equivalent value, that is generally subject to property taxation, and that tax reassessment follows the fee interest or its equivalent through various changes in ownership." (*Auerbach v. Assessment Appeals Bd. No. 1 for the County of Los Angeles* (2006) 39 Cal.4th 153, 162 [45 Cal.Rptr.3d 774, 137 P.3d 951] (*Auerbach*).)

■ Particularly relevant to our analysis are statutory and regulatory provisions applicable to real property held by trusts. The general rule is that the transfer of real property into a trust constitutes a change in ownership. (Cal. Code Regs., tit. 18, § 462.160, subd. (a).) Similarly, the termination of a trust, or a portion of the trust, gives rise to a change in ownership of property held by the trust. (*Id.,* subd. (c).) These general rules are subject to numerous exceptions. For example, a transfer of real property to a trust revocable by the trustor is not a change in ownership. (§ 62, subd. (d); Cal. Code Regs., tit. 18, § 462.160, subd. (b)(2).) In addition, a transfer of real property to an irrevocable trust in which the trustor is the sole present beneficiary does not qualify as a change in ownership. (§ 62, subd. (d); Cal. Code Regs., tit. 18, § 462.160, subd. (b)(1)(A).) However, a transfer of real property to an irrevocable trust constitutes a change in ownership if persons other than the trustor are present beneficiaries of the trust, unless an exclusion from change in ownership otherwise applies.[4] (Cal. Code Regs., tit. 18, § 462.160, subd. (b)(1)(A).)

The task force report explained the treatment of trusts in part as follows: "Revocable living trusts are merely a substitute for a will. The gifts over to persons other than the trustor are contingent; the trust can be revoked or those beneficiaries may predecease the trustor. . . . [¶] If the trust is revocable it is excluded because the rights conferred are contingent. If the trustor is the sole beneficiary during his lifetime, his retained interest is considered to be 'substantially equivalent in value' to the fee interest in any real property covered by the trust. He is therefore the true owner and the change in

---

[4] Certain transfers are subject in whole or in part to an exclusion from treatment as a change in ownership. These include certain transfers to a spouse (§ 63), a parent or child (§ 63.1, subd. (a)(1) & (2)), or a grandchild (§ 63.1, subd. (a)(3)). Transfers between parents and children and from grandparents to grandchildren are subject to an exclusion only if the transferee of the property files a timely claim for exclusion. (§ 63.1, subd. (d)(1).) These exclusions apply to property held in trust. (Cal. Code Regs., tit. 18, § 462.160, subd. (b)(3) & (4).)

ownership does not occur <u>until</u> the property passes to the remaindermen on the trustor's death." (Task force report, *supra*, at p. 43.)

The treatment under Proposition 13 of real property held by a trust derives from the "principle of trust law that the creation of a trust divides title— placing legal title in the trustee, and *equitable* title in the beneficiaries. [Citations.]" (*Allen v. Sutter County Bd. of Equalization* (1983) 139 Cal.App.3d 887, 890 [189 Cal.Rptr. 101] (*Allen*).) For purposes of determining change in ownership, the relevant inquiry is who has the beneficial or equitable ownership of the property, not who holds legal title. (Cf. Cal. Code Regs., tit. 18, § 462.240, subd. (a) [transfer of bare legal title is not change in ownership].) Thus, if there is a transfer of property to a trust in which the proportional interests of the beneficiaries remain the same before and after the transfer, there is no change in ownership, even though there is a change in legal title. (See Cal. Code Regs., tit. 18, § 462.160, subd. (b)(5).)

The question presented here is whether there is a change in ownership when one trust beneficiary succeeds another. The pertinent statutes do not answer the question. Nevertheless, the regulations suggest that a change in trust beneficiaries triggers a change in ownership. For example, in the regulation establishing that the creation of a trust does not constitute a change in ownership when the beneficiary is the trustor or someone else entitled to an exclusion, the regulation also provides that there is a change in ownership to the extent that persons not entitled to an exclusion "are *or become* present beneficiaries of the trust . . . ."[5] (Cal. Code Regs., tit. 18, § 462.160, subd. (b)(1)(A), (2) & (3), italics added.) Thus, the regulation provides that a change in ownership occurs not just when certain persons *are* present beneficiaries upon creation of a trust, but also when certain persons *become* present beneficiaries after a trust has been created. The inclusion of the words "or become" signals that the addition or substitution of present beneficiaries during the term of a trust may constitute a change in ownership. Interpreting the regulation otherwise and limiting its application to present beneficiaries at the creation of a trust would render the words "or become" mere surplusage. (See *People v. Hudson* (2006) 38 Cal.4th 1002, 1010 [44 Cal.Rptr.3d 632, 136 P.3d 168] [interpretation rendering statutory term surplusage to be avoided].) The regulation addresses the situation in which a person not entitled to an exclusion from change in ownership becomes a present beneficiary in place of, or in addition to, a present beneficiary entitled to such an exclusion. It does not specifically address the situation presented here,

---

[5] The full text of the exception for interspousal transfers effected through a trust is as follows: "The following transfers do not constitute changes in ownership: [¶] . . . [¶] (b)(3) Interspousal Trusts. The transfer is one to which the interspousal exclusion applies. However, a change in ownership of trust property does occur to the extent that persons other than the trustor-transferor's spouse are or become present beneficiaries of the trust unless otherwise excluded from change in ownership." (Cal. Code Regs., tit. 18, § 462.160, subd. (b)(3).)

when one beneficiary not entitled to an exclusion from change in ownership is succeeded by another such beneficiary. However, because the regulation rests on the concept that the addition or substitution of a beneficiary during the term of the trust constitutes a change in ownership unless an exclusion applies, this general principle would appear to govern the circumstances presented by our facts.[6]

A treatise for tax practitioners underscores the importance of recent changes to the governing regulation reflecting that the succession of beneficiaries during the term of a trust may constitute a change in ownership. According to that treatise, "[t]he State Board of Equalization has rewritten its rules relating to trusts. . . . Probably the most significant change . . . is the frequent reference to some one 'becoming' a present beneficiary as a triggering event." (1 Ehrman & Flavin, Taxing Cal. Property (3d ed. 2005 supp.) § 2:14, p. 19, fns. omitted.) The treatise offers the following cautionary note: "A special topic survey by the State Board of Equalization issued in April 2004 indicates that practitioners not infrequently tell their clients that there is no change in ownership of trust property until a deed is recorded transferring title out of the trust. In fact, the change in ownership may be triggered by the death of one beneficiary and the succession of another beneficiary, without a termination of the trust, much less the recordation of a deed transferring title out of the name of the trust." (*Ibid.*)

The trustee contends there was no change in ownership when Reilly succeeded McGovern as trust beneficiary because as an income beneficiary he did not possess rights typically associated with fee ownership of property, such as the right to possess and sell the property. We know of no reported decision addressing a situation similar to Reilly's, in which a successor beneficiary receives a lifetime interest in income generated by a property but not the right to possession. However, State Board of Equalization (Board) Property Tax Annotation No. 220.0780, which reflects a 1989 Board advice memorandum directed to the San Diego County Assessor, is directly on point. The annotation provides: "Trusts. The creation of a life estate in property *or in all of the income from that property* constitutes a change in ownership

---

[6] In a recent decision, our Supreme Court considered whether there was a change in ownership when grandchildren succeeded their grandparents as beneficiaries to trusts holding real property. (*Auerbach, supra,* 39 Cal.4th 153.) The parties agreed that the land changed ownership (subject to a $1 million reassessment exclusion pursuant to section 63.1) but disagreed on whether the change in ownership included a building on the property, which was technically "owned" by a lessee under the terms of a lease. (*Auerbach, supra,* 39 Cal.4th at p. 160.) The court held there was a change in ownership of the trusts' interest in the building as well as the land. (*Id.* at p. 165.) While the court's analysis is mostly inapplicable to our facts, the decision nevertheless confirms the general principle that the succession of beneficiaries during the term of a trust constitutes a change in ownership except to the extent an exclusion from change in ownership applies.

unless a specific statutory exclusion applies. Likewise, on the termination of the first life estate, a second life estate, whether in property *or in all of the income it generates*, may be created and constitute a change of ownership or not, again depending on the applicability of the various statutory exclusions." (3 Property Taxes Law Guide (rev. 2003-1) Property Tax Annots., p. 5878, italics added.)

The trustee disputes the applicability of the Board's annotation, claiming it is simply "an attorney's opinion as to the property tax implications in a specific and unique situation" without the force or effect of law. The trustee claims the situation presented in the annotation is "utterly unlike" the one before this court, arguing that Reilly is not entitled to income for life directly from the property but only receives net income from the trust, which may sell the property at any time.

■ Our Supreme Court considered the deference accorded to the Board's annotations in *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1 [78 Cal.Rptr.2d 1, 960 P.2d 1031]. An administrative agency's quasi-legislative rules, such as regulations enacted pursuant to powers delegated by the Legislature, have the "dignity of statutes." (*Id.* at p. 10.) In reviewing the legality of a regulation, our inquiry is generally confined to whether the regulation is arbitrary, capricious, or without reasonable or rational basis. (*Id.* at p. 11.) By contrast, "the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation." (*Id.* at p. 7.) Among other factors to consider in weighing the persuasive value of an agency's interpretation are whether the agency is assumed to have pertinent expertise and technical knowledge, whether the agency's interpretation is long-standing and consistently maintained, and whether the interpretation was reached after public notice and comment. (*Id.* at pp. 12–13.)

The Board's Property Tax Annotation 220.0780 is not binding on this court, although the context in which it arose suggests it is entitled to some degree of weight. Because there is no other annotation on the topic of which we are aware, the Board's interpretation appears to be consistent as well as long-standing (since at least 1989, when the Board issued the memorandum underlying the annotation). Further, while there may be areas of agency expertise more complex or technical than the determination of a property's beneficial ownership, this much is clear: Because part of the Board's function is to assess the tax consequences resulting from the myriad ways in which property may be held, it has practical expertise this court lacks. With its expertise and background, the Board is positioned to establish consistent rules regarding change in ownership. And, while it is true the annotation results

from an advice memorandum arising out of a specific set of facts, we disagree with the trustee that the facts underlying the annotation are "utterly unlike" the facts here. We find no support for the distinction urged by the trustee that the annotation concerned a beneficiary who, unlike Reilly, had a lifetime right to income directly from the *property*. Rather, like Reilly's interest, the beneficiary's interest was in the net income from the *trust*, which held title to the property. The analysis supporting the annotation does not turn on whether the trust was required to hold the property for the remainder of the beneficiary's lifetime. Indeed, because the trustee was empowered to invade the principal to support the beneficiary, it is reasonable to assume the trustee, like the trustee here, possessed the power to sell the property before the beneficiary died.

Ultimately, even though the Board's annotation has some persuasive value, it is this court's task to interpret section 60 independently and determine whether the facts presented here give rise to a change in ownership. (See *Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 7.) Accordingly, we proceed to consider the three-part test for change in ownership contained in section 60.

3. *Application of Three-part Change in Ownership Test*

a. *Present Interest*

The task force report explained the "present interest" requirement as an attempt to avoid treating contingent or future transfers as changes of ownership: "Everyone would agree that the making of a will is not a change in ownership of the real property covered by the will, because during the testator's life everything is contingent. He can change his will; he can sell his property; or the beneficiary can predecease him. There is no transfer of a present interest in the testator's property. This element is necessary to protect a variety of contingent or inchoate transfers from unintended change in ownership treatment, including future interests, revocable transfers and transfers with retained life estates." (Task force report, *supra,* at p. 39.)

Reilly plainly acquired a present interest in the property upon McGovern's death in 2000. Because a change in ownership may occur by operation of law or through a trust, formal transfer of legal title was not required. (See Cal. Code Regs., tit. 18, § 462.001.) When Reilly became the sole present income beneficiary of the trust, he became the property's equitable owner. (See *Allen, supra,* 139 Cal.App.3d at p. 890.) As such, he had the requisite present interest in the property for purposes of section 60. (See generally *Allen,* at p. 892.)

The trustee advances a number of arguments in support of his contention there was no transfer of a present interest in the property upon McGovern's

death. First, he points out that the Civil Code defines a "present interest" in property as one that entitles the owner to its "immediate possession." (Civ. Code, § 689.) Because Reilly had no such right to possession, the trustee claims, he did not have a present interest in the property. We are not persuaded.

■ As a general rule, we may rely on the definition of a common law property term in the Civil Code unless it is inconsistent with the term's usage in the Revenue and Taxation Code. (*Pacific Southwest, supra,* 1 Cal.4th at p. 163, fn. 3.) The Revenue and Taxation Code does not contain a definition of "present interest." Nevertheless, it is apparent that the focus of the task force in proposing a "present interest" requirement was to prevent the grant of a contingent or future interest in property from being treated as a present transfer giving rise to a reassessable change in ownership. (See task force report, *supra,* at p. 39.) Nothing in the task force report or in subsequent case law construing section 60 suggests that the right to immediate possession is a prerequisite to finding a change in ownership. Moreover, our Supreme Court has found a change in ownership even in circumstances where a lessee is in possession of the property at the time of transfer and the new beneficial owner has no immediate right of possession. (See *Auerbach, supra,* 39 Cal.4th at pp. 160, 165; see also *Pacific Southwest, supra,* 1 Cal.4th at p. 164.) Because the Civil Code definition of "present interest" is inconsistent with that term's usage in section 60, it is inapplicable in the reassessment context.

The trustee also argues that Reilly was not the property's "sole equitable owner," contending that *all* trust beneficiaries, including McGovern and Reilly, became the property's equitable owners upon creation of the trust. According to the trustee, Reilly's rights as an income beneficiary vested in 1967, when the property was distributed to the trust.

The trustee's argument is incorrect as a matter of basic property law. In 1967, Reilly had no present interest.[7] Rather, in 1967 Reilly acquired a future interest that was contingent on McGovern dying without issue. Once McGovern died without issue, Reilly's interest vested and became a present interest. Reilly's interest in 1967 was precisely the type of contingent, inchoate interest that the task force report sought to exclude from treatment as a present interest giving rise to a change in ownership.

The trustee premises his argument in part on *Allen, supra,* 139 Cal.App.3d 887. The trustee's reliance on *Allen* is misplaced. In *Allen,* real property was

---

[7] The trustee does not claim Reilly obtained a present interest in the property in 1967 or at any other time. Instead, the trustee contends that Reilly's interest was in the trust income, not the property held by the trust. Nevertheless, the trustee still argues that Reilly's rights as a trust beneficiary vested upon O'Reilly's death.

placed in an irrevocable trust in 1961. (*Id.* at p. 889.) The beneficiaries were four grandchildren of the trustors. The trustee was directed to distribute to each beneficiary his or her share of the trust estate when the beneficiary reached the age of 25. In 1978, the youngest beneficiary reached the age of 25 and the trustee conveyed the trust property to the four beneficiaries as tenants in common. The assessor reassessed the property for the 1978–1979 tax year, reasoning that the termination of the trust constituted a change in ownership. (*Ibid.*) The Court of Appeal concluded that the change in ownership took place in 1961, when the trust was created, because the four grandchildren became the equitable owners of the property at that time. (*Id.* at p. 890.) There was no change in ownership in 1978 when the trust was terminated, because the beneficial ownership of the property remained the same before and after the termination of the trust. (*Ibid.*)

Contrary to the trustee's contention, *Allen* does not stand for the proposition that all current and future beneficiaries of a trust are considered the equitable owners of property held by the trust. In *Allen,* the four grandchildren became the property's beneficial owners when the trust was created because they were all present income beneficiaries at the trust's inception. It is for this reason that the court in *Allen* declared that "[b]eneficial use of the property was transferred to the beneficiaries at the *creation* of the trust, and remained there." (*Allen, supra,* 139 Cal.App.3d at p. 892, fn. omitted.) By contrast, Reilly had no such present interest upon the creation of the trust. When the property was placed in the trust, its beneficial use transferred to the then-present beneficiary, McGovern, but not to future or contingent beneficiaries.

The trustee's position is also inconsistent with the language of the governing regulation, which specifies that a change in ownership occurs with respect to property held by a trust when persons other than those entitled to an exclusion "are or become *present* beneficiaries of the trust . . . ." (Cal. Code Regs., tit. 18, § 462.160, subd. (b)(3), italics added.) For purposes of reassessing property held in trust, the analysis focuses on identifying the *present* beneficiary. Treating all beneficiaries as equitable owners of trust property, irrespective of whether their interests are vested, contingent, present, or future, is incompatible with this approach.

### b.  *Beneficial Use*

■  The second prong of section 60 requires the transfer of a property's beneficial use as a prerequisite to finding a change in ownership. (See *Pacific Southwest, supra,* 1 Cal.4th at p. 163.) The task force report explained: "Beneficial use is necessary to protect custodianships, guardianships, trusteeships, security interests, and other fiduciary relationships from unintended

change in ownership treatment." (Task force report, *supra*, at p. 39.) Thus, the focus is on the person or entity that enjoys the benefits of the property, not upon the fiduciary that holds title to property for the benefit of another.

The receipt of income generated by property qualifies as a "beneficial use" of the property; possession is not required. (See *Pacific Southwest, supra,* 1 Cal.4th at p. 164.) In *Pacific Southwest,* our Supreme Court held that a landlord who owned commercial property "exercise[d] its beneficial interest by exacting rent from [the tenant] rather than acquiring physical control of the demised premises . . . ." (*Ibid.*) It was irrelevant that the property's owner could not occupy the property during the term of the lease, because the owner still enjoyed the *value* of the property represented by the rent. (*Ibid.*) Here, even though as income beneficiary Reilly did not have a right to occupy the property, he enjoyed its beneficial use as a result of his right to receive the net income the property generated.

Section 61, subdivision (g), which concerns change in ownership upon the termination of a life estate, reinforces the principle that possession need not be transferred for there to be a change in ownership. That subdivision provides there is a change in ownership upon termination of a life estate when there is a vesting of a right *either to possession or enjoyment* of a remainder or reversionary interest. (§ 61, subd. (g).) The right to receive income from real property constitutes a right to enjoyment. (See *Pacific Southwest, supra,* 1 Cal.4th at pp. 170–171 [landlord receiving rent "enjoys the entire beneficial interest in the property"].) The regulations, too, confirm that a present beneficial interest may include "either use of or income from" property. (Cal. Code Regs., tit. 18, § 462.160, subd. (d)(1).)

The trustee disputes that Reilly acquired beneficial use of the property, claiming that Reilly's lifetime interest is in the trust income, not the underlying property. He points out that the trustee could sell the property during Reilly's lifetime (which the trustee, in fact, did) and invest the proceeds elsewhere. The fact remains, however, that so long as the trust held title to the property, Reilly was its equitable owner who enjoyed the net income generated by the property.

c. *Value Substantially Equivalent to Fee Interest*

"The third prong of section 60 requires that the value of the interest transferred be 'substantially equal to the value of the fee interest.' " (*Pacific Southwest, supra,* 1 Cal.4th at p. 164.) The task force report described this as the "value equivalence" test, which is "necessary to determine who is the primary owner of the property at any given time." (Task force report, *supra,* at p. 39.) The intention is to "find a change in ownership when the *primary*

*economic value* of the land is transferred from one person or entity to another." (*Pacific Southwest, supra,* 1 Cal.4th at p. 167, italics added.)

For purposes of determining change in ownership, a life estate in real property is an interest equivalent in value to the fee interest. (*Leckie v. County of Orange* (1998) 65 Cal.App.4th 334, 339 [76 Cal.Rptr.2d 426].) Thus, the creation of a life estate in real property qualifies as a change in ownership unless an exclusion otherwise applies. (Cal. Code Regs., tit. 18, § 462.060, subd. (a).) It is immaterial whether a life estate grants a lifetime interest either in income from the property or in the property itself. (Cf. *Pacific Southwest, supra,* 1 Cal.4th at p. 164 [right to receive income is beneficial use of property].)

Because a change in ownership occurs upon the creation of a life estate in income from real property unless an exclusion applies, it follows that the termination of such a life estate followed by the creation of a new life estate in income from the property would also qualify as a change in ownership, subject to statutory exclusions. Indeed, subdivision (g) of section 61 provides that a change in ownership occurs when there is "[a]ny vesting of the right to possession or enjoyment of a remainder or reversionary interest . . . upon the termination of a life estate or other similar precedent property interest, except as provided in subdivision (d) of Section 62 and in Section 63." A remainder interest is a future estate, other than a reversion, which is dependent on a prior estate. (Civ. Code, § 769.) A life estate is an estate in property. (Civ. Code, § 761.) Therefore, a successive life estate dependent upon a prior life estate qualifies as a remainder interest. Consequently, under section 61, subdivision (g), the termination of one life estate followed by the creation of new life estate is a change in ownership. We therefore reach the same conclusion as the Board did in its Property Tax Annotation 220.0780, discussed *ante.* (See 3 Property Taxes Law Guide, *supra,* Property Tax Annots., p. 5878.)

Here, Reilly's remainder interest vested upon McGovern's death, when he succeeded to a life interest in the income from the trust property. Applying change-in-ownership principles governing life estates, Reilly's life interest in income generated by trust property is equivalent to the value of the fee interest in the underlying property, at least for change-in-ownership purposes under section 60.

The trustee contends that Reilly's interest was not equivalent to the fee interest in the underlying property, asserting that Reilly as income beneficiary lacks the power to possess, sell, or devise trust property, among other things.

While it is true that an income beneficiary of a trust lacks certain rights associated with a fee interest in property, the change-in-ownership analysis does not turn on who possesses the incidents of ownership. Rather, it is the *value* of the property interest that is relevant, and in particular, who holds the property's "primary economic value." (*Pacific Southwest, supra,* 1 Cal.4th at p. 167.) Here, Reilly acquired the property's primary economic value when he succeeded McGovern as lifetime income beneficiary. For the rest of his life, he is entitled to the net income generated by trust property. To the extent trust property may be sold, he would still receive its primary economic value because he will enjoy the net income from the proceeds of any property sale for the duration of his life.

■ The trustee suggests that Reilly's interest is less valuable than a fee interest because there is no guarantee he will receive income from the property. The trustee may, for example, subordinate Reilly's immediate income interest to the long-term interests of the remaindermen, using trust income for property repairs and renovations that decrease the trust's current net income but that increase or preserve the property's value for persons with a remainder interest. Or, to consider an extreme example, property held by a trust may generate no present income but may have value primarily because the property appreciates over time. Even in such situations, a lifetime income beneficiary holds the property's primary economic value for change-in-ownership purposes. The Uniform Principal and Income Act (Prob. Code, § 16320 et seq.) addresses the situation in which a trust pays income from property to a beneficiary for life or for a term of years and thereafter distributes the trust principal to another. (13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 166, p. 733.) Under the Uniform Principal and Income Act, a trustee is obligated to apportion enhancements in property value between income (going to the life tenant) and principal (going to the remainder beneficiary). (See generally 13 Witkin, Summary of Cal. Law, *supra*, Trusts, § 166, p. 733.) The consequence of the law is that a trustee must ensure an equitable apportionment of enhancements in trust property value between income beneficiaries and principal beneficiaries. Thus, trust law generally prohibits a trustee from depriving present income beneficiaries of the value of their interests in trust property. Moreover, the trustee here lacks discretion to withhold net trust income from the beneficiary because the terms of O'Reilly's will provide that the trustee "shall" pay all net trust income to the beneficiary.

The trustee also asserts that principles applicable to life estates are inapposite because Reilly did not have a life estate in the property. While it may be true that Reilly did not directly have an "estate" in property (cf. Civ. Code, § 701), he nevertheless held an equitable life interest in the property

through the trust. Life estates are often conveyed through trusts, and a lifetime interest in income from trust property has historically been referred to as an " 'equitable life estate.' " (*Estate of Lefranc* (1952) 38 Cal.2d 289, 295 & fn. 1 [239 P.2d 617]; see *Estate of McCurdy* (1925) 197 Cal. 276, 286 [240 P. 498]; see also *Estate of High* (1967) 250 Cal.App.2d 561, 562–563, 567 [58 Cal.Rptr. 694] [characterizing successive income beneficiaries with right to trust income as having successive "life estates"].) Because it is Reilly's equitable property interest that is relevant for change-in-ownership purposes, it is irrelevant that he did not hold title to the property as a life tenant.

The trustee further contends that, even if his interest could be characterized as a life estate, its value is not equivalent to the fee interest. The trustee relies on *Pacific Southwest,* which the trustee claims disparages the value of a life estate when compared to a fee interest. *Pacific Southwest* does not aid the trustee. In that case, the Supreme Court did not address life estates in general but instead limited its analysis to a life estate retained by the grantor. (*Pacific Southwest, supra,* 1 Cal.4th at p. 165; see *Leckie v. County of Orange, supra,* 65 Cal.App.4th at p. 340.) The court noted in dicta that a purchaser of a retained life estate limited to the grantor's life would have "an estate of questionable value" because it would be subject to defeasance at an unknown time. (*Pacific Southwest, supra,* 1 Cal.4th at p. 165.) Upon the grantor's death, the purchaser's interest would disappear and the purchaser would retain nothing of value. Here, by contrast, Reilly's interest in the trust property was measured by his own lifetime and not someone else's. The fact the trustee could sell the property during the term of the trust does not render Reilly's interest of questionable value, because he still would have a right to the income from the sale proceeds for the rest of his life.

■ We hold there is a change in ownership of property held by a trust pursuant to section 60 to the extent that a person not entitled to a statutory exclusion from change-in-ownership treatment becomes a present beneficiary during the term of the trust and acquires a lifetime interest in income from the trust. We observe that trusts take many different forms and may afford beneficiaries rights materially different from those held by Reilly.[8] We emphasize that our holding is limited to the facts before us.

---

[8] In a discretionary trust, for example, a trustee may have significant discretion to distribute or withhold trust income. (13 Witkin, Summary of Cal. Law, *supra,* § 152, p. 717.) In a trust for support, the trustee's power to distribute trust principal or income is limited to that necessary to support or educate the beneficiary. (*Ibid.*) And, a trustee may possess a "sprinkle power" to distribute income as the trustee sees fit among a number of beneficiaries. (See Cal. Code Regs., tit. 18, § 462.160, subd. (b)(1)(A), example 1.)

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Pollak, J., and Siggins, J., concurred.

A petition for a rehearing was denied September 21, 2006.