Filed 1/19/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOSEPH BOHNETT,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF SANTA BARBARA,<br><br>    Defendant and Respondent. | 2d Civ. No. B303520<br>(Super. Ct. No. 16CV04932)<br>(Santa Barbara County) |

After the death of both surviving spouses and co-trustors of a family trust, the trustee certified that their former residence was transferred to the trustors' children. Later, one beneficiary purchased his siblings' shares in the trust. We conclude that the purchase by one beneficiary from his siblings and co-beneficiaries was not a parent-child transfer exempt from reassessment for property tax purposes.

Joseph Bohnett (Bohnett) appeals from the judgment denying him a property tax refund after a court trial. He contends the home he purchased from his parents' trust after their deaths was exempt from reassessment as a transfer between parent and child. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Bernard C. Wehe and Sheila F. Wehe created the Wehe Family Trust ("the trust") and recorded a grant deed transferring their home ("the property") to themselves as trustees. The trust was revocable during their lifetimes and became irrevocable upon the death of the surviving spouse. The trust provided that after the death of the surviving spouse, the estate (other than furniture, furnishings, and personal effects) "shall be distributed in equal shares" to Sheila Wehe's thirteen children, including Bohnett.

The trustee was empowered "to partition, allot and distribute the trust estate, in undivided interests or in kind, or partly in money and partly in kind . . . and to sell such property as the Trustee may deem necessary to make such division or distribution. The Trustee is also authorized to distribute a disproportionate share of any asset to a beneficiary entitled to receive a distribution, provided that the fair market value of all the assets distributed to such beneficiary is equal to the fair market value of the proportionate interest such beneficiary is entitled to receive in all of the assets then available for distribution."

Sheila Wehe died in 2003. Bernard Wehe died in September 2008. The thirteen siblings "could not decide 'what to do,'" so the property was rented out, with all siblings entitled to share the rental receipts. The rent was deposited into the trust's bank account.

In January 2012, the successor trustee filed a Claim for Reassessment Exclusion for Transfer Between Parent and Child (first Proposition 58 claim). The successor trustee signed it under penalty of perjury. It listed Sheila and Bernard Wehe as

2

transferors, her thirteen children as transferees, and the date of Bernard Wehe's death as the date of transfer. The County allowed the claim.

On May 16, 2013, a grant deed was recorded transferring the property from the successor trustee to Bohnett and his wife (the Bohnetts). A Preliminary Change of Ownership Report signed by the Bohnetts listed the trust as the seller/transferor, stated that the purchase was from a family member and was a transfer between parent(s) and child(ren), and listed the sale price as $1,030,000. A deed of trust secured a $417,000 loan to the Bohnetts from Parkside Lending, LLC, to purchase the property. The trustee distributed the purchase money in equal shares to the thirteen siblings, including Bohnett.

On May 16, 2013, a second Claim for Reassessment Exclusion for Transfer Between Parent and Child (second Proposition 58 claim) was filed. It was signed by the successor trustee and the Bohnetts, listed Sheila and Bernard Wehe as transferors, the Bohnetts as transferees, and left blank the date of purchase or transfer. The County found that on May 16, 2013, there was a 92.3 percent (i.e., twelve-thirteenths) change in ownership. The County reassessed the property from a previous value of $157,731 to $962,873 for 2012/2013, and $963,114 for 2013/2014.

Bohnett filed an Application for Changed Assessment for each of the two tax years. After a hearing, the County's Assessment Appeals Board denied the applications. Bohnett then filed a complaint seeking a refund of taxes, claiming that the County should have allowed exclusion from reassessment as a transfer between parent and child. Following a court trial, the court entered final judgment in favor of the County.

DISCUSSION

Bohnett contends the property was exempt from reassessment as a sale or transfer from parent to child. We disagree.

We review de novo whether a change of ownership has occurred triggering reassessment for property taxes. (*Empire Properties v. County of Los Angeles* (1996) 44 Cal.App.4th 781, 785 (*Empire Properties*).)

Proposition 13, approved by the voters on June 6, 1978, provides that the tax on real property shall be based on "the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred." (Cal. Const., art. XIIIA, § 2, subd. (a).) An exception for parent-child transfers was added by Proposition 58, approved by the voters on November 4, 1986. It provides, "the terms 'purchased' and 'change in ownership' do not include the purchase or transfer of the principal residence of the transferor in the case of a purchase or transfer between parents and their children." (Cal. Const., art. XIIIA, § 2, subd. (h)(1).)

Proposition 58 is construed in Revenue and Taxation Code section 63.1. It provides that for purposes of the exemption, "children" includes a stepchild, son-in-law, or daughter-in-law. (Rev. & Tax. Code, § 63.1, subd. (c)(3)(B) & (C).) The statutory scheme "shall be liberally construed in order to carry out the intent of Proposition 58 . . . to exclude from change in ownership purchases or transfers between parents and their children described therein." (Stats. 1987, ch. 48, § 2.)

As a "general principle[,] . . . transfers by reason of death occur at the time of death." (Rev. & Tax. Code, § 63.1, subd. (g).) A transfer includes "transfer of the present beneficial

ownership of property . . . through the medium of an inter vivos or testamentary trust."  (Rev. & Tax. Code, § 63.1, subd. (c)(9); see Cal. Code Regs., tit. 18, § 462.001.)  A transfer of ownership occurs when a revocable trust including an interest in real property that vests in persons other than the trustor or their spouse becomes irrevocable.  (Rev. & Tax. Code, § 61, subd. (h); Cal. Code Regs., tit. 18, §§ 462.160, subd. (b)(2), 462.260, subd. (d)(1).)  "With the creation of an irrevocable trust, trust beneficiaries acquire a vested and present beneficial interest in the trust property."  (*Empire Properties, supra,* 44 Cal.App.4th at p. 787.)  Thus, beneficial ownership of the property was transferred to the thirteen children when Bernard Wehe died and the trust became irrevocable.  (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1320 (*Steinhart*).)

The death of Bernard Wehe thus resulted in the transfer of "the property's primary economic value" to the thirteen children.  (*Reilly v. City and County of San Francisco* (2006) 142 Cal.App.4th 480, 485 (*Reilly*).)  The parties recognized and ratified this transfer when the trustee filed the first Proposition 58 claim listing the thirteen children as the transferees and owners of the property.  The change in ownership occurred then, as certified in the first Proposition 58 claim, not when "a deed [was subsequently] recorded transferring title out of the trust," and not when possession was transferred.  (*Id.* at pp. 490, 492, 495.)  While the trustee held "bare legal title," the beneficiaries held equitable title.  (*Id.* at p. 489; *Steinhart, supra,* 47 Cal.4th at p. 1320.)  "For purposes of determining change in ownership, the relevant inquiry is who has the beneficial or equitable ownership of the property, not who holds legal title." (*Reilly*, at p. 489.)

5

Bohnett later purchased the interests of his siblings. This constituted a sibling-to-sibling sale rather than a sale or transfer from parent to child. The fact that Bohnett received title from the trustee does not negate the earlier transfer of the equitable interest in the property to the thirteen children. "[S]uccession of beneficiaries during the term of a trust constitutes a change in ownership except to the extent an exclusion from change in ownership applies." (*Reilly, supra*, 142 Cal.App.4th at p. 490, fn. 6.) The transfer to the thirteen children was excluded from reassessment, but the subsequent transfer to Bohnett was not.

For purposes of property tax assessment two transfers of ownership occurred here: an exempt transfer in 2008 to the thirteen children (as confirmed by the first Proposition 58 claim), and a non-exempt transfer in 2013 when Bohnett purchased his siblings' shares. (*Phelps v. Orange County Assessment Appeals Board No. 1* (2010) 187 Cal.App.4th 653, 666.) In *Phelps*, when the trustor died, beneficiaries including Wilson received the right to the income from real property held by the trust. When Wilson died, the income passed to his children. The court rejected the argument that only a single transfer had occurred because there were two transfers—one on the death of the trustor and the second on the death of Wilson. "Proposition 13 tracks real ownership of real property, which *Steinhart* determined follows the equitable estate." (*Ibid*.)

The trustee here had the authority to distribute property "in divided or undivided interests and to adjust resulting differences in valuation." (Prob. Code, § 16246.) The trust authorized the trustee to partition the property, to distribute disproportionate shares of an asset, and to sell

6

property as necessary to distribute the estate. The trustee also had the power to encumber trust property (Prob. Code, § 16228) but did not do so. Instead, Bohnett obtained a loan and used it as part of the funds he provided to buy out the interests of his twelve siblings.

The transfers here do not constitute a "step transaction," which "treats a series of nominally separate transactional 'steps' as a single transaction if the steps are, in substance, interdependent and focused toward a particular result." (*Penner v. County of Santa Barbara* (1995) 37 Cal.App.4th 1672, 1679.) In *Penner*, we held that a transfer from a mother to a limited partnership owned by her and her children was not an exempt parent-child transfer. Although she "could have avoided a reassessment if she had transferred the property to herself and her children and then to the partnership," the step transaction doctrine "does not . . . allow a taxpayer to invent steps that never existed." (*Id*. at pp. 1678-1679.) As in *Penner*, Bohnett "'must accept the tax consequences of [his] choice whether contemplated or not, [citations] and may not enjoy the benefit of some other route [he] might have chosen to follow but did not." (*Id*. at p. 1679.)

Bohnett relies on interpretations of the Board of Equalization (BOE) to support his contention that his purchase was an exempt transfer. The BOE is empowered to "[p]rescribe rules and regulations to govern . . . assessors when assessing" and to "[p]repare and issue instructions to assessors . . . in the assessment of property for the purposes of taxation." (Gov. Code, § 15606, subds. (c) & (e).) The BOE's interpretations of the law are not binding on the court. But because the BOE "undoubtedly has expertise in property tax matters," its interpretations are

7

entitled to deference, even if "embodied only in an informal advice letter to the county assessors." (*Holland v. Assessment Appeals Board No. 1* (2014) 58 Cal.4th 482, 494.)

The BOE's interpretations do not support an exemption here. Bohnett discusses Example 12-3 of the Assessors' Handbook. (Bd. of Equalization, Assessors' Handbook (Sept. 2010) § 401, ch. 3, p. 89.) In that example, the trustor leaves her two children her home and an equivalent amount in securities. The trustee distributes to each child a 50 percent interest in the home and 50 percent of the securities. Alternatively, the trustee gives the home to one child and the securities to the other. The example concludes, "The home could qualify for exclusion under either allocation." But that did not happen here. The home was transferred to all thirteen children first, and Bohnett later purchased his siblings' shares.

A BOE property tax annotation concludes that "a loan made by the beneficiary of the real property rather than the trustee in order to equalize the trust interests would be considered payment for the other beneficiaries' interests in the real property resulting in a transfer between beneficiaries. In that event, the parent-child exclusion would not apply to the interests transferred between beneficiaries." (BOE Property Tax Annotations, Annotation 625.0235.005, Trusts—Share and Share Alike (Aug. 4, 2003), <https://www.boe.ca.gov/lawguides/property/current/ptlg/annt/62 5-0235-005.html> [as of Jan. 4, 2021], archived at <https://perma.cc/37G9-ER5V>.) A back-up letter to the annotation reaches the same conclusion. (Lou Ambrose, Tax Counsel for Bd. of Equalization, opinion letter to Assessor Stephen Vagnini, Aug. 4, 2003,

<https://www.boe.ca.gov/proptaxes/pdf/625_0235_005b.pdf> [as of Jan. 4, 2021], archived at <https://perma.cc/L7L9-AZGV>.)  Here, Bohnett purchased his siblings' interests in the property by paying cash to the trust, including funds he obtained through a loan from a commercial lender.  "The transfer of [the other siblings'] interest to [Bohnett] in exchange for [Bohnett's] payment results in a change in ownership for which the parent-child exclusion under section 63.1 is not applicable."  (*Id*. at p. 3.)

The BOE reached the same conclusion in a letter to assessors.  (BOE Letter to County Assessors No. 2008/018, Revenue and Taxation Code Section 63.1: Parent-Child and Grandparent/Grandchild Exclusion Questions and Answers (Feb. 29, 2008), Question 36, pp. 11-12, <https://www.boe.ca.gov/proptaxes/pdf/lta08018.pdf> [as of Jan. 4, 2021], archived at <https://perma.cc/9SJN-6JGH>.)  It states that a trustee may encumber trust property and distribute the loan proceeds to equalize the distribution.  "However, a loan cannot be made by any of the beneficiaries of the real property to the trust in order to equalize the trust interests.  Such loan would be considered payment for the other beneficiaries' interests in the real property resulting in a transfer between beneficiaries rather than a transfer from parent to child, which would disqualify the transfer from the parent-child exclusion."  The exemption is also inapplicable here because Bohnett made an outright purchase of his siblings' interests.

### DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

We concur:


GILBERT, P. J.        PERREN, J.

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Delwiche & Von Dollen and Steven C. Von Dollen for Plaintiff and Appellant.

Michael C. Ghizzoni, County Counsel, Rana Gerges Warren, Deputy County Counsel, for Plaintiff and Respondent.