Filed 5/23/24  Braemar Partnership v. County of San Deigo CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| BRAEMAR PARTNERSHIP 9TH & A LIMITED PARTNERSHIP, Plaintiffs and Appellants, v. COUNTY OF SAN DIEGO, Defendant and Respondent. | D081464 (Super. Ct. No. 37-2021-00025551-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Greenberg Traurig and Colin W. Fraser for Plaintiffs and Appellants.

Claudia G. Silva, County Counsel and Laura E. Dolan, Senior Deputy County Counsel, for Defendant and Respondent.

In 1978, the California electorate passed a property tax relief initiative in the form of Proposition 13, limiting the circumstances in which property could be reassessed to account for an increase in its market value. One such accepted circumstance was when there is a "change in ownership" of a property. In this appeal, we must decide whether there was a "change in ownership" permitting reassessment when a lessor on a long-term lease died, resulting in a transfer of her fee interest in the property to her heirs. Under the plain language of the Revenue and Taxation Code, where the remaining term on the lease was less than 35 years at the time of the lessor's death, the answer to the question is yes. We therefore affirm the judgment denying the lessees' claim for a property tax refund.

## FACTUAL AND PROCEDURAL BACKGROUND

The property at issue in this case is a commercial building and lots comprising a portion of the Catamaran Hotel on Mission Bay. For decades, the property has been owned by the Taylor Non-Exempt Marital Properties Trust (Taylor Trust) and Mission Bay Hotel Properties LP as tenants in common, each with a 50 percent interest. On July 1, 1985, they leased the subject property to Braemar Partnership and 9th & A Limited Partnership (collectively Braemar) for a term of 60 years, until June 30, 2045.

In March 2016, the sole beneficiary of the Taylor Trust, Mary F. Taylor, died. Upon her death, the beneficial ownership of the assets in the trust, including the subject property, transferred to her children. At that time, there were about 29 years remaining on the lease.

The San Diego County Assessor's Office (Assessor) recognized the transfer as a change in ownership, triggering a 50 percent reassessment

of the property. The Assessor relied on Revenue and Taxation Code[1] section 61, subdivision (c)(1)(D), which states that a change in ownership occurs for tax purposes upon "[a]ny transfer of a lessor's interest in taxable real property subject to a lease with a remaining term (including renewal options) of less than 35 years." The property value was reassessed from $48,850,908 to $51,547,928, which in turn increased the taxes owed. The Assessor sent a supplemental tax bill to Braemar.[2]

Braemar challenged the reassessment before the Assessment Appeals Board No. 1 (Board), arguing that when its partners signed the 60-year lease, it became the "owner" for property tax purposes, and remained the owner regardless of the time left on the lease when Mary Taylor passed. Therefore, Braemar asserted, there was no change in ownership when Taylor's interest in the property transferred to her children, so the partial reassessment and resulting increase in property taxes were erroneous. Following a hearing, the Board agreed with the Assessor that there was a change in ownership requiring reassessment.

Braemar then sued the County of San Diego in superior court seeking a refund of the supplemental taxes paid—$7,919. Braemar maintained that reassessment was improper because there was no change in ownership. The superior court disagreed and affirmed the Board's ruling. Braemar now appeals.

---

[1]    Further statutory references are to the Revenue and Taxation Code.

[2]    The original lease is not included in the appellate record. But it is undisputed that Braemar was responsible for the property taxes.

**DISCUSSION**

In this court, Braemar continues to argue there was no change in ownership to justify reassessment. The County responds that reassessment was proper under the plain language of section 61, subdivision (c)(1)(D). We agree with the County.

"Proposition 13, adopted in 1978, limits the amount that the assessed value of real property may be increased to reflect increases in the property's actual market value. When ownership of the property changes, however, the property may be reassessed at its current market value." (*Auerbach v. Assessment Appeals Bd. No. 1* (2006) 39 Cal.4th 153, 157; see Cal. Const., art XIII A, §§ 1–2.) "Changing the assessed value of real property to its current market value can result in a substantial increase in the tax on that property. Thus, determining whether and when a change of ownership has occurred can have significant tax consequences." (*Auerbach*, at p. 157.)

"Change in ownership" is defined in section 60. This statute effectively created a three-part test to determine whether a particular transaction resulted in a change in ownership. (*Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 162 (*Pacific Southwest*).) To qualify as a change, there must be: " '[1] a transfer of a present interest in real property, [2] including the beneficial use thereof, [3] the value of which is substantially equal to the value of the fee interest.' " (*Ibid.*, quoting § 60.) The three elements of this test "are commonly referred to as 'present interest,' 'beneficial ownership,' and 'value equivalence.' " (*Dyanlyn Two v. County of Orange* (2015) 234 Cal.App.4th, 800, 809 (*Dyanlyn*).)

The " 'value equivalence' " element is used to determine who the "primary owner" is when multiple parties have an interest in one property. (*Dyanlyn, supra,* 234 Cal.App.4th at p. 810.) This simplifies the job of the

4

assessor, who must reappraise a property only when the primary owner transfers their interest. (*Ibid*.; accord, *Pacific Southwest*, *supra*, 1 Cal.4th at p. 168 ["a transaction should not trigger reassessment unless it transfers the interest of the party carrying the primary economic weight of the property"].) In the context of leases—where the lessor holds a reversionary interest and the lessee holds a leasehold interest in the same property—sections 61 and 62 "codify the concept that the 'value equivalence' element must be determined by reference to the lease duration." (*Dyanlyn*, at pp. 810–811.)

Section 61 provides that a change in ownership includes in part:

"(A) The creation of a leasehold interest in taxable real property for a term of 35 years or more (including renewal options).

"(B) The termination of a leasehold interest in taxable real property which had an original term of 35 years or more (including renewal options).

"(C) Any transfer of a leasehold interest having a remaining term of 35 years or more (including renewal options).

"(D) Any transfer of a lessor's interest in taxable real property subject to a lease with a *remaining term* (including renewal options) *of less than 35 years*." (§ 61, subd. (c)(1)(A)–(D), italics added.)

Conversely, under section 62, subdivision (g), "[a]ny transfer of a lessor's interest in taxable real property subject to a lease with a *remaining term* (including renewal options) *of 35 years or more*" does *not* constitute a change in ownership. (Italics added.)[3]

---

[3]    The State Board of Equalization issued a rule mirroring sections 61 and 62. (See Cal. Code Regs., tit. 18, § 462.100, subds. (a) & (b).)

5

As reflected across sections 61 and 62, "the creation, transfer or termination of a leasehold of 35 years or more should achieve a change in ownership because in that case the primary economic value of the land resides in the lease." (*Pacific Southwest*, *supra*, 1 Cal.4th at p. 167.) "[S]uch leases will often confer substantial rights on the lessee, such as the right to develop or modify capital assets, the long-term use or uses to which the land is to be put, and the like." (*Id*. at p. 168.) By contrast, the lessor's rights are practically limited to receiving rent. (*Ibid*.) However, when the remaining term on the lease falls below 35 years, the primary economic value of the land shifts back to the lessor. (*Dyanlyn*, *supra*, 234 Cal.App.4th at p. 817.)[4]

"The interpretation and application of section 60 is a question of law. We review de novo a determination that an assessable change in ownership occurred under section 60." (*Reilly v. City and County of San Francisco* (2006) 142 Cal.App.4th 480, 487.) Here, it is undisputed that Braemar received a present interest, beneficial use, and the value equivalence of the subject property when its partners originally signed the 60-year lease. (See § 61, subd. (c)(1)(A); *Dyanlyn*, *supra*, 234 Cal.App.4th at p. 812.) It is

---

[4] Thirty-five years was adopted as the dividing line because financial institutions will lend on the security of a lease of that length or longer. (*Dyanlyn*, *supra*, 234 Cal.App.4th at p. 811.)

likewise undisputed that Mary Taylor transferred a present interest and beneficial ownership in the property to her children upon her death.[5]

The parties disagree on whether Taylor also transferred the value equivalence of the property at that time. This issue is resolved by the plain language of section 61, subdivision (c)(1)(D). Again, that provision states that any transfer of a lessor's interest in real property "subject to a lease with a *remaining* term"—not *original* term—"of less than 35 years" constitutes a change in ownership. (*Ibid.,* italics added.) Here, it is settled that when Taylor's interest transferred to her children, there were 29 years left on the lease. Thus, the Assessor, the Board, and the superior court all correctly determined there was a change in ownership.

Resisting this simple conclusion, Braemar argues that when it entered into the 60-year lease, it obtained the value equivalence of the property and never lost it, despite the passage of time, so the value equivalence could not have transferred to the children. For this argument, Braemar relies on select passages from *Dyanlyn*, *supra*, 234 Cal.App.4th 800. However, *Dyanlyn* involved a complex transaction that is quite different from the transfer in this case. Read in its entirety, it is clear *Dyanlyn* does not affect the outcome here.

In *Dyanlyn*, a retail shopping center was subject to a 60-year ground lease. When there were about 30 years remaining on the lease, the lessor and lessee agreed to extend the lease by 15 years. A few weeks later, the

---

[5] In its reply brief, Braemar cursorily argues that the transfer did not satisfy all three section 60 elements because Braemar captured all three elements when the lease was created. As a matter of fairness, we will not consider arguments raised for the first time on reply. (*People v. Tully* (2012) 54 Cal.4th 952, 1075.) In any event, Braemar wrongly assume there cannot be multiple present interests and beneficial uses in a leased property. (See, e.g., *Pacific Southwest*, *supra*, 1 Cal.4th at pp. 162–164.)

lessor sold the property to the long-term lessee and a third-party investor (collectively Dyanlyn). The county reassessed the property after the sale. Dyanlyn challenged the reassessment, arguing there was no change of ownership for property tax purposes. (*Dyanlyn*, *supra*, 234 Cal.App.4th at pp. 804–805.) Division Three of this court examined each step of this two-step transaction separately and then collectively to decide whether it was "a sham to avoid reassessment of property taxes." (*Id*. at pp. 817–818.)

Considering the first step, the court observed there were no provisions in sections 61 or 62, nor in the property tax rules (Cal. Code Regs., tit. 18, § 460 et seq.), discussing lease extensions. (*Dyanlyn*, *supra*, 234 Cal.App.4th at p. 813.) The court therefore turned to annotations and advisory opinions from the State Board of Equalization (BOE) for guidance. (*Id*. at pp. 813–814.) As *Dyanlyn* discussed, the BOE has opined that in an "over/under/over" lease extension scenario—where a lease was originally *over* 35 years, fell *under* 35 years due to time passing, then rose *over* 35 years based on a lease extension—there is no change in ownership. (*Id*. at p. 817, citing Board's Advisory Opinion (No. 09013291), dated May 27, 2009[6] (Advisory Opinion).)

---

[6] The Advisory Opinion is included in the appellate record. It is also available online. (See Matthew F. Burke, Tax Counsel for Bd. of Equalization, letter to Chief Dean Kinnee, Assessed Properties Division, dated May 27, 2009, <https://www.boe.ca.gov/proptaxes/pdf/220_0357.pdf> [as of May 23, 2024], archived at http://perma.cc/9GMX-XK5C (click "view the live page").)

The BOE reasoned:

> "When the lease was first entered into, the lessee obtained a present interest and the beneficial use, and while the leasehold term is 35 years or longer, the lessee has the value equivalence. Thus, the lessee has become the owner of the leased premises for property tax purposes. Once the leasehold term drops below 35 years, the value equivalence shifts to the lessor; however, we have consistently taken the position that when a long-term lease for 35 years or longer drops down to a term of less than 35 years through the mere passage of time, although the value equivalence shifts from the lessee to the lessor, there is no change in ownership. This is because the lessor does not become the 'owner' of the leased premises for property tax purposes. When the lease drops down to a term of less than 35 years through mere passage of time and only the value equivalence shifts to the lessor, the lessee remains the owner for property tax purposes and, in our opinion, will continue to be the owner for property tax purposes *unless and until* the lease expires or *the lessor otherwise transfers its underlying fee interest in the property*.

> "If the lessor and lessee subsequently enter into a lease extension at any time while the remaining leasehold period is under 35 years, the value equivalence once again transfers to the lessee. However, the lessee has at all times retained a present interest in and the beneficial use of the property upon which a change in ownership has already been made, and which made the lessee the owner for property tax purposes. A present interest in and the beneficial use of the property were transferred to the lessee at the beginning of the lease, and have remained with the lessee at all times. Thus, no change in ownership occurs." (Advisory Opinion, *supra,* at pp. 5–6, fn. omitted, italics added.)

The *Dyanlyn* court agreed with this analysis and therefore found no change in ownership when the lessor and lessee extended their lease. (*Dyanlyn, supra*, 234 Cal.App.4th at p. 817.) The lessee captured a present

9

interest, beneficial use, and the value equivalence of the property when the parties signed the 60-year lease. Although the value equivalence returned to the lessor as the years passed, the lessee regained the value equivalence when they extended the lease to about 45 years. But because there was no "correlative transfer of the present interest and beneficial use" at that point, there was no change in ownership. (Advisory Opinion, *supra,* at p. 6; see *Dyanlyn*, at pp. 804–805, 817.)

The second step of the transaction involved a straightforward application of section 62, subdivision (g), which (as indicated above) provides that any transfer of a lessor's interest in property subject to a lease with a remaining term of 35 years or more does not constitute a change in ownership. Since the lease extension brought the remaining term of the lease to about 45 years, the sale of the property from the lessor to Dyanlyn was excluded from reassessment. (*Dyanlyn*, *supra*, 234 Cal.App.4th at p. 817.)

Even if the parties in *Dyanlyn* had not entered into the lease extension, and the lessor sold the property while the remaining term was below 35 years, the court opined there would still be no change in ownership under the logic of the "over/under/over" lease extension analysis. (*Dyanlyn*, *supra*, 234 Cal.App.4th at p. 814.) Still, the lessee would capture all three elements upon signing the 60-year lease. The value equivalence element would shift back to the lessor over time, but the long-term lessee would gain the fee value upon purchasing the property. In both scenarios, " 'the lessee remains the primary economic owner before and after the transactions' " and " 'at all times retained a present interest in and the beneficial use of the property' " so there would be no change in ownership prompting reassessment. (*Id*. at p. 817.)

10

Significantly, *Dyanlyn* distinguished our situation—the lessor's transfer to a third party as opposed to a long-term lessee.  (*Dyanlyn*, *supra*, 234 Cal.App.4th at pp. 816–817.)  The court found the rule that a change of ownership occurs anytime a lessor transfers their interest in property subject to a lease with a remaining term of less than 35 years problematic only in the latter type of transfer.  (*Id*. at p. 817 ["the rule as stated would not apply in an 'over, under' lease situation when there is a transfer of a lessor's interest in taxable real property *to the long-term lessee*" (italics added)].)

*Dyanlyn* does not apply to this case, which does not involve a lease extension and/or sale to a lessee.  Unlike those transactions, Braemar did not end up with the value equivalence after the transfer in this case.  The lessors regained the value equivalence when the remaining term on the lease fell below 35 years, and upon Mary Taylor's death that value equivalence transferred to her children, not to Braemar.  This resulted in a change of ownership within the plain language of section 61, subdivision (c)(1)(D).  (Cf. Advisory Opinion, *supra,* at p. 6, fn. 6 ["if a 40-year lease were to drop to 30 years through mere passage of time, a transfer by the lessor of its fee interest in the property subject to the 30-year lease results in a change in ownership"].)  As the BOE indicated, Braemar remained the "owner" of the property for tax purposes—even after their lease term fell below 35 years and the value equivalence returned to the lessors—*until* Taylor transferred her interest in the property.  (See Advisory Opinion, p. 6.)  At that point, all three section 60 elements were transferred to her children, triggering reassessment.

The Second Appellate District, Division One recently rejected a similar argument in *Equinix LLC v. County of Los Angeles* (May 9, 2024, B324243) __ Cal.App.5th __ (*Equinix*).  In that case, the appellants leased a property for a

11

term of 20 years with three 5-year options. (*Id*. at p. *3.) When there were about 26 years left on the lease, the lessor sold its interest in the property. (*Id*. at pp. *1–*2.) In holding that the sale constituted a change in ownership, the Court of Appeal disagreed with appellants that they became the "primary owner" of the property when they entered into the long-term lease *and remained* the primary owner despite the sale. (*Id*. at pp. *10–*11.) The court saw nothing in the statutory scheme suggesting that appellants continued to hold the value equivalence once the lease term fell below 35 years. (*Id*. at p. *13.) "To the contrary, by enacting [section 61, subdivision (c)(1)(D)], the Legislature rejected" that very approach. (*Equinix*, at p. *13.) The court likewise found appellants' reliance on *Dyanlyn* misplaced, as *Dyanlyn* "says nothing about" a situation where "the remaining lease term was less than 35 years at the time of the sale, and the sale was not to the lessee but a third party." (*Equinix*, at p. *14.)

Finally, to the extent Braemar emphasizes that it must bear the tax increase even though it had no control over the transfer, we suspect the parties could have addressed this issue in the original lease. (See, e.g., *Equinix*, *supra*, __ Cal.App.5th at p. *19 ["a long-term lessee can negotiate the responsibility for payment of any property tax increase resulting from a change in ownership during the lease"].) In any event, this is not a reason to ignore the clear language of section 61, subdivision (c)(1)(D). (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 ["If the language is clear, courts must generally follow its plain meaning"].)

## DISPOSITION

The judgment is affirmed.  The County is entitled to costs on appeal.


DATO, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

13