[No. G021484. Fourth Dist., Div. Three. June 30, 1998.]

BERNARD A. LECKIE, as Trustee, etc., Plaintiff and Appellant, v. COUNTY OF ORANGE et al., Defendants and Appellants.

## COUNSEL

Bernard A. Leckie, in pro. per., and Meserve, Mumper & Hughes for Plaintiff and Appellant.

Laurence M. Watson, County Counsel, and Jim Persinger, Deputy County Counsel, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, and Timothy G. Laddish, Assistant Attorney General, as Amici Curiae on behalf of Defendants and Appellants.

## OPINION

**WALLIN, J.**—The County of Orange Assessment Appeals Board (the Board) appeals the summary judgment in favor of Bernard A. Leckie, successor trustee of the Charles G. Adams Trust, determining that the creation of a life estate in real property upon Adams's death was not a change in ownership for purposes of reassessment of property value. We reverse. Leckie appeals the denial of his attorney fees, claiming he is entitled to them because the trial court found in his favor. We reverse the determination of the trial court, rendering the attorney fee issue moot.

Charles Adams lived with Rachel Cordova in his house in Santa Ana for a substantial number of years before his death. They never married. Adams transferred the house to his revocable trust in 1985; pursuant to the trust provisions, a life estate in the house was created for Rachel on his death in 1992. She was then 58 years old. Upon termination of the life estate, the remainder interest will pass equally to two of Adams's four adult children.

The county assessor determined that the transfer of the life estate was a change of ownership and assessed the house at its full cash value as of Adams's date of death. Leckie, Adams's attorney and successor trustee, challenged the assessment before the Board, where it was sustained. Leckie filed a complaint for tax refund in the superior court and a subsequent motion for summary judgment.

The trial court granted the summary judgment, stating, "[A] change of ownership did not occur upon the death of the original Trustee, Charles G.

Adams . . . . [¶] . . . [The value of the] life estate to Rachel Cordova who was born November 5, 1934 and who under the provisions of the Trust was required to pay all of the expenses involved with said property, including all property taxes thereon . . . was not substantially equal to the fee interest in said property as required by Revenue & Taxation[] Code Section 60 . . . . [¶] . . . [U]pon the death of the life tenant . . . or termination of the life estate at an earlier date, the remainder interest under the provisions of the Trust passes to two (2) natural children of Charles G. Adams, [and] . . . the passage of the property to said children is exempt from reassessment pursuant to Revenue & Taxation[] Code Section 63.1." The Board was ordered to pay 10 percent interest on the overpayment of tax.

Leckie filed a motion for attorney fees under Revenue and Taxation Code section 5152. The motion was denied because Leckie "failed to show that [the] . . . assessor believed or had reason to believe that the rule was unconstitutional . . . . Moreover, it is doubtful that [Leckie] is entitled to recover attorney fees as a pro per."

The Board appeals from the reversal of the reassessment, claiming the transfer of a life estate to another is a change of ownership and pointing out other defects in the summary judgment order. Leckie also appeals from the denial of his motion for attorney fees. We conclude the transfer was a change of ownership; accordingly, we do not reach the Board's other claims of error or the issue of attorney fees.

In 1978, California voters enacted Proposition 13 which, among other things, amended the Constitution to change the property tax system from "a current value method to an acquisition value system . . . ." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 236 [149 Cal.Rptr. 239, 583 P.2d 1281].) The assessed value of existing real property was set at the full cash value on the 1975-1976 tax bill, and can be reappraised only when a purchase or other change in ownership occurs. (Cal. Const., art. XIII A, § 2, subd. (a).)

Sections of the Revenue and Taxation Code[1] dealing with the effects of Proposition 13 were a direct result of the Task Force on Property Tax Administration, a 35-member panel that included staff from the Legislature and the State Board of Equalization, county assessors, trade associations, and lawyers in the public and private sectors. The task force submitted a report (task force report) to the Assembly Committee on Revenue and Taxation on January 22, 1979, with its recommendations, which were adopted either verbatim or with nonsubstantive technical revisions or minor

---

[1] All statutory references are to the Revenue and Taxation Code.

changes. (*Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 161 [2 Cal.Rptr.2d 536, 820 P.2d 1046].)

The task force explained that it "sought to distill the basic characteristics of a 'change in ownership' and embody them in a single test [now section 60] which could be applied evenhandedly to distinguish between 'changes' and 'non-changes' . . . ." (Task force rep., *supra,* at p. 38.) It concluded a change in ownership was a transfer of: (1) a present interest; (2) the beneficial use; and (3) rights substantially equivalent in value to a fee interest. This resulted in the language of section 60, which defines a change of ownership as "a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest." The trial court found Cordova's life estate was not substantially equal to the fee interest and thus failed to qualify as a change of ownership.

The task force discussed the "value equivalence" test as "necessary to determine who is the primary owner of the property at any given time. . . . [¶] A major purpose of this third element . . . is to avoid . . . unwarranted complexity by identifying the primary owner, so that only a transfer by him will be a change in ownership and when it occurs the *whole* property will be reappraised. If [a] . . . lease . . . was a short term lease (the landlord owned the main economic value), the landlord's sale subject to the lease would count [as a change of ownership]. If, on the other hand, the lease was a long term lease (the lessee's interest was the main economic package), the lease assignment would count [as a change of ownership]. In either case the entire fee value of the leased premises would be reappraised." (Task force rep., *supra,* at pp. 39-40.)

The treatment of life estates was focused on those retained by the transferor, such as when a parent transfers the family home to his children, but retains the right to live there during his life. (*Pacific Southwest Realty Co. v. County of Los Angeles, supra,* 1 Cal.4th at p. 179.) The task force explained, "Transfers with a retained life estate are not ownership changes until the life tenant dies. The life tenant has the dominant or primary interest under the 'value equivalence' element of the general change in ownership definition, and there is no transfer of the *present interest* in the property until the life tenant dies and the property vests in the remainder." (Task force rep., *supra,* at p. 44.) This recommendation resulted in section 62, subdivision (e), which exempts from a change in ownership "[a]ny transfer by an instrument whose terms reserve to the transferor an estate for years or an estate for life. However, the termination of such an estate . . . shall constitute a change in ownership," except where the trustor/transferor retains the reversion or the reversion passes to the transferor's spouse.

 The converse to the rationale underlying the treatment of retained life estates suggests that a life estate transferred to a nonspouse third party should constitute a change of ownership. Rather than retaining the primary interest under the value equivalency test, the transferor is divesting himself of it. The transferee receives a present interest in the property, the beneficial use of the property and the primary interest under the value equivalency test, which qualifies as a change of ownership under section 60.

The State Board of Equalization interpreted the transfer of a life estate in the same manner when, under the authority of Government Code section 15606, subdivision (c), it promulgated Property Tax Rule 462.060(a). That rule provides, "The creation of a life estate in real property is a change in ownership at the time of transfer unless the instrument creating the life estate reserves such estate in the transferor or the transferor's spouse. However, the subsequent transfer of such a life estate by the transferor or the transferor's spouse to a third party is a change in ownership." (Cal. Code Regs., tit. 18, § 462.060, subd. (a).) This rule was among those adopted contemporaneously with the adoption of section 60 et seq., in August 1979. (Stats. 1979, ch. 242, § 4, p. 506.) "[A] contemporary administrative construction of a statute by the agency charged with its enforcement and interpretation, 'is entitled to great weight unless it is clearly erroneous or unauthorized.' " (*International Business Machines* v. *State Bd. of Equalization* (1980) 26 Cal.3d 923, 930-931 [163 Cal.Rptr. 782, 609 P.2d 1]; accord, *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra*, 22 Cal.3d at pp. 243-244; *Social Services Union* v. *City and County of San Francisco* (1991) 234 Cal.App.3d 1093, 1101 [285 Cal.Rptr. 905].)

 The trial court here failed to consider the property tax rule at all; instead, it erroneously construed the value equivalency prong of section 60's three-pronged test as determinative of the change of ownership question rather than looking at all three prongs. " 'The Task Force was . . . anxious that the single [three-pronged] test be sufficiently consistent with the normal understanding of "change in ownership" to withstand legal attack.' " (*Pacific Southwest Realty Co.* v. *County of Los Angeles, supra*, 1 Cal.4th at p. 161.) Looking at section 60's test as a whole, the transfer of the life estate by Adams to a different person comports with the normal understanding of a change in ownership. " 'In common parlance the term "ownership" generally connotes the right of possession and use to the exclusion of others, as distinguished from technical aspects of title. [Citation.] This basic concept of ownership is consistent with the purposes, goals, and design of [Proposition 13], which is primarily a tax relief measure . . . .' [Citation.]" (*E. Gottschalk & Co.* v. *County of Merced* (1987) 196 Cal.App.3d 1378, 1385 [242 Cal.Rptr. 526].)

Leckie points out the Supreme Court in *Pacific Southwest Realty* characterized a life estate as "an estate of questionable value" which does "not approach that of a fee." (1 Cal.4th at p. 165.) But these comments were made, as dicta, in a discussion of a *retained* life estate, which is clearly exempt from the change of ownership provisions. Furthermore, the holding in *Pacific Southwest Realty* determined that a transfer of a fee with a retained leasehold estate was a change of ownership not subject to the exemption in section 62, subdivision (e) because the beneficial use had been transferred in the form of the right to receive rent. The court did not discuss what the result would be where, as here, the holder of the life estate was someone other than the transferor.

Leckie also points to the statutory exemption to reassessment for a principal residence transferred between parents and children (§ 63.1) and claims the policy behind this exemption will be defeated by reassessing the property at a higher value upon the transfer of the life estate. Had the intervening transfer of the life estate been an "economically or legally meaningless transaction[]" (*Penner* v. *County of Santa Barbara* (1995) 37 Cal.App.4th 1672, 1679 [44 Cal.Rptr.2d 606]), Leckie might prevail under the step transaction doctrine, which focuses on the end result of a series of transfers. (*Ibid.*) But Cordova's life estate is a significant deviation from the path to the transfer of the fee to the children. Reassessment here does not violate the spirit of section 63.1.

The judgment is reversed; the trial court is directed to enter judgment for the Board, which is entitled to recover its costs.

Sills, P. J., and Rylaarsdam, J., concurred.

The petition of appellant Bernard A. Leckie for review by the Supreme Court was denied October 14, 1998.